**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jaime LARES–VALDEZ,**
**Defendant–Appellant.**

No. 90–50345.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 16, 1990.*

Decided Jan. 25, 1991.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Shawn M. Hays, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Melanie K. Pierson, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BROWNING, BEEZER and RYMER, Circuit Judges.

PER CURIAM:

After a trial before the Honorable J. Lawrence Irving, District Judge, a jury convicted Jaime Lares–Valdez of possessing with intent to distribute and importing approximately 218 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1), 952 & 960. Lares–Valdez challenges a pretrial ruling by the Honorable Judith N. Keep denying a motion to suppress his statements. He claims drug enforcement agents failed to apprise him adequately of his constitutional rights in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We affirm.

I

On October 18, 1989, Lares–Valdez requested admission to the United States at the Calexico port of entry. A customs inspector noticed that Lares–Valdez's hands were shaking and that he wore thick-soled shoes resembling types used for drug smuggling. The inspector referred Lares–Valdez to a secondary inspection area, where his search found heroin in the soles of Lares–Valdez's shoes. A DEA agent arrived, placed Lares–Valdez under arrest and advised him of his rights in Spanish, reading from a DEA Form. Lares–Valdez indicated that he understood his rights and then admitted that he knew he was in possession of heroin and was intending to distribute it.

II

"The adequacy of a *Miranda* warning is a legal question reviewable de novo, although ' "the factual findings underlying the adequacy challenge, such as what a defendant was told, are subject to clearly erroneous review." ' " *United States v. Bland*, 908 F.2d 471, 472 (9th Cir.1990) (quoting *United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir.1989)). The factual basis of this challenge is undisputed, leaving us to consider the purely legal question of the adequacy of the warnings.

III

Lares–Valdez claims the warnings given to him were inadequate because the agent failed to apprise him of a right to cut off questioning at any time and of a right to answer some questions and refuse to answer others. He also claims the agent should have told him that the questions he was about to ask would call for incriminating responses.

We agree with the other federal courts that have ruled that a defendant need not be informed of a right to stop questioning after it has begun. *See United States v. DiGiacomo*, 579 F.2d 1211, 1214 (10th Cir.1978);[1] *United States v. Davis*, 459 F.2d 167, 168–69 (6th Cir.1972); *United States v. Alba*, 732 F.Supp. 306, 309–10 (D.Conn.1990); *Gandia v. Hoke*, 648 F.Supp. 1425, 1432 (E.D.N.Y.1986), *aff'd without opinion*, 819 F.2d 1129 (2d

1. *DiGiacomo* noted that, "[a]lthough there may be no express requirement to warn suspects of the right to terminate questioning, the government's failure to so warn is certainly an important factor to be considered in determining the voluntariness of any statements made." 579 F.2d at 1214. In this case, though, Lares–Valdez challenges only the adequacy of the warnings, not the voluntariness of his statements.

Cir.), *cert. denied,* 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987); *United States ex rel. Feliciano v. Lane,* 548 F.Supp. 79, 81 (N.D.Ill.1982), *aff'd without opinion,* 714 F.2d 148 (7th Cir.), *cert. denied,* 464 U.S. 1010, 104 S.Ct. 532, 78 L.Ed.2d 713 (1983). The only warnings *Miranda* requires were those given to Lares–Valdez in this case, namely, that he had the right to remain silent, that anything he said could be used against him in court, that he had the right to consult an attorney before being asked any questions, that the attorney could be present during questioning and that if he could not afford a lawyer, one would be appointed for him if he wished. *See Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07. "Once warnings have been given, the *subsequent* procedure is clear," the *Miranda* Court wrote. "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473–74, 86 S.Ct. at 1627, 16 L.Ed.2d at 723 (emphasis added). The Court thus contemplated the right to cease questioning and declined to include it among the warnings it deemed necessary to effect an accused's fifth and sixth amendment rights. *Miranda* requires that Lares–Valdez understood the right to remain silent; when and how he then chose to exercise that right is up to him. *See Alba,* 732 F.Supp. at 310 ("Having advised of the essential rights, the officers are not obliged to warn of any or all of the circumstances or manners in which the right may be invoked").

Likewise, there is nothing in *Miranda* to suggest that Lares–Valdez should have been advised of a right to answer some questions and refuse to answer others. As with the right to stop the questioning, this claimed "right" merely describes a manner in which he could have exercised the fifth amendment privilege the agent had adequately informed him was his. It need not be included in the warnings. *See id.*

Lares–Valdez's final claim, that the agent should have cautioned him that the questions he was about to ask would pro-voke incriminating answers, also fails. Lares–Valdez was warned that anything he said could be used against him in court. He acknowledged that he understood that right and waived it. Anything he told the agent thereafter was said at his peril.

Because the warnings given to Lares–Valdez were sufficient to apprise him of his constitutional rights according to *Miranda,* we

AFFIRM.